UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Sky Law Group,

                    Plaintiff

v.

Paul Padda Law, PLLC, et al.,

                    Defendants

Case No. 2:23-cv-01793-CDS-MDC

**Omnibus Order Addressing Motions for Summary Judgment, Motion to Seal, and Motion to Supplement**

[ECF Nos. 122, 125, 126, 129, 142]

This case arises from a fee dispute between two law firms.[1] Pending before the court is (1) Sky Law's motion for summary judgment, ECF Nos. 122, 126 (sealed); (2) Sky Law's motion to seal, ECF No. 125; (3) the defendants' motion for summary judgment, ECF No. 129; and (4) the defendants' motion for leave to file supplemental briefing, ECF No. 142. For the reasons set forth below, I grant Sky Law's motion for summary judgment, grant Sky Law's motion to seal, grant in part the defendants' motion for summary judgment, and deny the defendants' motion for leave to file supplemental briefing.

**I.      Undisputed Facts**

On March 18, 2018, the Client was injured while traveling in Nevada.[2] In turn, the Client hired Sky Law Group, a California-based law firm, to represent her in the litigation arising from the accident.[3] Sky Law and the Client signed a contingency fee agreement on March 24, 2018, wherein Sky Law would receive a 40% contingency fee if the case settled during litigation.[4]

---

[1] Out of an abundance of caution and respect for her privacy, I refer to the shared client as "Client" or "the Client" throughout this order.
[2] ECF Nos. 122, 126 at 2; ECF No. 129 at 2, 5; Client's decl., Pl.'s Ex. A, ECF No. 129-2.
[3] ECF Nos. 122, 126 at 2; ECF No. 129 at 5; Pl.'s Ex. 2, ECF No. 129-2 at 3; Sky Law Retainer Agreement (Mar. 26, 2018), Defs.' Ex. 2, ECF No. 127-2.
[4] Sky Law Fee Agreement, Defs.' Ex. C, ECF No. 129-4; Sky Law Retainer Agreement (Mar. 24, 2018), Pl.'s Ex. 2, ECF No. 127-2.

But it was ultimately Paul Padda Law, a Nevada-based law firm, who filed the Client's complaint on March 19, 2020.[5] The preceding email thread between Sky Law and Padda reads, in relevant part, as follows:

> **Sky Law's email to Padda (2/7/2020):** "We have sent the medical records for our mutual [Client]. Your firm was associated in as counsel on this matter since the injury occurred in Las Vegas. The statute is quickly approaching, March 24, 2018. We will not be able to get a demand out in time and the case needs to be filed. Since your firm will be handling the litigation in Nevada, may I propose a new fee split of 60/40 so we are taking 40% of any recovery. Please advise."[6]

> **Padda's reply (2/17/2020):** "Getting a complaint filed fairly soon will not be a problem. Once we speak, Brandon can start working on it. I don't have a lot of information for this client so when we speak tomorrow I'll need her mailing address, email and telephone."[7]

On March 11, 2020, Padda and the Client signed an "Attorney-Client Retainer Agreement (Nevada)."[8] The next day, the Client and the parties signed a "Consent to Fee Split" agreement pursuant to Nevada Rule of Professional Responsibility 1.5.[9] The agreement provided that Sky Law and Padda Law would split the attorney's fees collected under the Client's Contingency Fee Agreement: Padda Law would receive 55%, and Sky Law would receive the remaining 45%.[10] The agreement was signed by the Client, Paul S. Padda, Esq. (Paul Padda Law), and Kiran Bisla, Esq. (Sky Law Group).[11]

---

[5] *See* Padda decl., Defs.' Ex. B, ECF No. 129-3; Compl., Pl.'s Ex. 1, ECF No. 127-1.
[6] Email Exchange between Paul Padda and Sky Law (Feb. 7–Nov. 13, 2020), Pl.'s Ex. 5, ECF No. 127-5 (sealed) at 9; Defs.' Ex. G, ECF No. 129-8 at 2.
[7] ECF No. 127-5 at 8.
[8] Padda Law's Attorney-Client Retainer Agreement, Pl.'s Ex. 7, ECF No. 127-7 (sealed); Defs.' Ex. E, ECF No. 129-6.
[9] *See* Consent to Fee Split, Pl.'s Ex. 8, ECF No. 127-8 (sealed); Defs.' Ex. F, ECF No. 129-7.
[10] *Id.*
[11] *Id.*

2

A couple days later, Padda followed up with Sky Law about the Client by email:

> **Padda (3/16/2020):** "I met with [the Client] last week. We are moving forward and have a complaint drafted. Do you have any information on who the driver was? I would like to add her as a party . . . . If not, don't worry about it. I will just name her as Jane Doe. Also, while we received medical bills and the records from [the] Hospital, did you ever make a demand on [the company's] insurance carrier through a formal written demand? If so, please forward that as well. When we file the complaint, I will forward that to you."[12]

> **Sky Law (11/13/2020):** "I was just following up on a couple things with [Client]. I know you filed the complaint and was wondering how the case is going and what your thoughts are on the value. Also, I am sure it was an oversight but we never got the fee-split agreement from your office confirming the 60/40 split. Can you please provide that to our office for our records and a copy of the complaint. I am curious as to how Nevada pleadings look."[13]

> **Padda (11/13/2020):** "I forgot to send the fee split agreement. It was an oversight. Covid hit and I got distracted. See attached. Please sign and send back to me. If we agreed on 60/40, I must have forgotten because I put down 55/45. Anyways, it doesn't matter. I appreciate the referral! Keep them coming!"[14]

> **Sky Law (11/13/2020):** "I am glad to hear that you think the case is of decent value. I am attaching the signed fee split agreement as well."[15]

> **Padda (11/13/2020):** "Excellent. Thank you."[16]

Sky Law followed up with Padda Law on the status of the Client's case by email a couple years later:

> **Sky Law (6/2/2022):** "Can you give me an update on [the Client]? We sent the case to Paul to be filed and wanted to see what is going on with the case."[17]

---

[12] ECF No. 127-5 at 6.
[13] *Id.* at 5; *see also* ECF No. 127-1.
[14] ECF No. 127-5 at 3–4.
[15] *Id.* at 3.
[16] *Id.* at 2.
[17] Email Exchange Between Padda Law and Sky Law (June 2, 2020), Pl.'s Ex. 9, ECF No. 127-9 at 3 (sealed).

3

> **Padda (6/2/2022):** "This case is still in the discovery phase of litigation."[18]

Padda Law went on to settle the Client's case in August 2022 for $2,605,000.00.[19] The settlement funds were deposited into Padda's client trust account.[20] But Padda did not disburse any of the funds to Sky Law.[21] In turn, Sky Law filed suit for breach of contract, unjust enrichment, conversion, and deceptive trade practices. Compl., ECF No. 1. Sky Law's deceptive trade practices claim was dismissed. *See* Order, ECF No. 42. In the defendants' answer to the complaint, they asserted counterclaims for fraudulent inducement/misrepresentation, breach of the implied duty of good faith and fair dealing, and declaratory relief. Answer, ECF No. 48. However, the counterclaims for fraudulent inducement/misrepresentation and breach of the implied duty of good faith and fair dealing were later withdrawn with prejudice. *See* Order, ECF No. 73.

Now, both sides move for summary judgment on the breach of contract and conversion claims, and the defendants move for summary judgment on the unjust enrichment claim. ECF Nos. 122, 129. Further, Sky Law moves to seal exhibits related to their motion, ECF No. 125, and the defendants move for leave to file supplemental authority, ECF No. 142.

## II.    Summary Judgment

### A.  Legal Standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary-judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100,

---

[18] *Id.* at 2.

[19] Disbursement of Settlement Funds (Sept. 21, 2022), Pl.'s Ex. 11, ECF No. 127-11; Release of All Claims (Aug. 8, 2022), Pl.'s Ex. 10, ECF No. 127-10 (sealed).

[20] Paul Padda Law PLLC Accounts Demonstrative, Pl.'s Ex. 12, ECF No. 127-12.

[21] ECF No. 122 at 6; ECF No. 129 at 10.

1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

### B.  Discussion

Both sides move for summary judgment on the breach of contract and conversion claims. *See* ECF Nos. 122, 129. Only the defendants move for summary judgment on the unjust enrichment claim. *See* ECF No. 129. Nevada state law controls all three claims because that is where the parties contracted and the events giving rise to the contract occurred. *See Sotirakis v. United Serv. Auto. Ass'n*, 787 P.2d 788, 790 (Nev. 1990).

### 1.  Breach of Contract

Sky Law argues that Padda Law breached the referral agreement by failing to remit 45% of the attorney's fees earned from resolving the client's case through settlement. *See* ECF No. 122 at 2. Padda Law concedes that it did not remit that amount; however, it argues that it was not required to because Sky Law breached the referral agreement first. Specifically, Padda Law argues that the 45% fee arrangement reflected Sky Law's responsibility to "contribute 45% of the work and shoulder a commensurate amount of the litigation costs." ECF No. 129 at 3. But Sky Law did not contribute to the work or costs at all,[22] thereby breaching the referral agreement and relieving Padda Law of its duty to remit 45% of the attorney's fees. *Id.* In short,

---

[22] Padda Law advanced around $113,196.85 in litigation costs and expenses. ECF No. 129 at 3.

the dispute between the parties is whether they agreed to a "fee split" arrangement versus a "referral fee" agreement.[23]

When analyzing a breach of contract claim, "the initial focus is on whether the language of the contract is clear and unambiguous; if it is, the contract will be enforced as written." *Davis v. Beling*, 278 P.3d 501, 515 (Nev. 2012). In such a case, "the words of the contract must be taken in their usual and ordinary signification." *Dickenson v. State, Dep't of Wildlife*, 877 P.2d 1059, 1061 (Nev. 1994). But if "there is an ambiguity requiring extrinsic evidence to discern the parties' intent, summary judgment is improper." *Id.* "Any ambiguity, moreover, should be construed against the drafter." *Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007).

Here, both parties and the Client signed a "Consent to Fee Split," not a referral agreement, that reads as follows:

> The following constitutes an addendum to the Contingency Fee Agreement executed by the undersigned Client and Paul Padda Law on or about March 12, 2020. This addendum memorializes the Client's authorization, made pursuant to Nevada Rule of Professional Responsibility 1.5, to permit the sharing of the attorneys fee referenced in the Contingency Fee Agreement as follows:
>
> | | |
> |---|---|
> | Paul Padda Law, PLLC | 55% |
> | Sky Law Group, PC | 45% |
>
> Client and Paul Padda Law hereby agree that all other terms of the previously executed Contingency Fee Agreement shall govern unless otherwise set forth herein. To this end, Sky Law Group, PC is authorized to act on behalf of Client in the same manner as Paul Padda Law and is entitled to reimbursement of all costs incurred in the prosecution of Client's claim(s). In the event of a settlement and/or judgment, all funds shall be deposited in Paul Padda Law's client trust account and shall be distributed by Paul Padda Law. Any prior agreements between Sky Law Group, PC and Client are hereby deemed null and void.

---

[23] Padda Law also argues in the alternative that Sky Law's contract claim fails because there was no meeting of the minds and, in turn, no enforceable contract. *See* ECF No. 129. But this appears to be an attempt by the defendants to create an ambiguity where there is none. Regardless, as explained below, any ambiguity in a contract is construed against the drafter, which here is the defendants, so this argument fails. *See Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d 405, 407 (Nev. 2007).

> The parties further agree that the total fee to be charged in this case is reasonable, including the division of fees of among counsel referenced herein.

*See* Pl.'s Ex. 8, ECF No. 127-8 (sealed); Consent to Fee Split Authorization, Defs.' Ex. F, ECF No. 129-7.

Notably, the agreement says that the agreement was made pursuant to Nevada Rule of Professional Responsibility (NRPC) 1.5. Subsection (e) of that rule says that lawyers of different firms may divide fees "only if: (1) Reserved; (2) The client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing; and (3) The total fee is reasonable." NRPC 1.5(e) (May 1, 2006). Absent from the rule is a requirement that the division of legal fees reflect the contribution of services earned, and the defendants point to no case law suggesting otherwise. The same is true for the agreement's express language, as it only references a division in fees—not services.

The defendants submit an "Addendum to Retainer Agreement," dated September 17, 2018, which states the following:

> [Client] hereby agrees that the Paul Padda Law, PLLC by and through Paul Padda will be co-counsel with Sky Law Group, A.P.C. The Firms have agreed that the Paul Padda Law, PLLC will receive 10% of the gross recovery for attorneys' fees. The Firms herein assert that the joint representation will in no way increase the fees or costs that will be incurred by Client.
>
> Client has already hired Sky Law Group, A.P.C. to be your primary attorney, but need an attorney licensed in Nevada to help with the matter. Paul Padda Law, PLLC will be assisting the Sky Law Group, A.P.C. and generally taking direction from that firm. At this point, the agreement is only to assist pre-litigation to negotiate a settlement with the insurance carrier for the other driver in this matter. If this is not resolved pre-litigation, the representation by the Paul Padda Law, PLLC will end and clients and the Sky Law Group, A.P.C. would have to discuss other arrangements to hire the Paul Padda Law, PLLC.

Addendum to Retainer Agreement, Defs.' Ex. D, ECF No. 129-5.

However, the submitted copy of the addendum shows that it was only signed by Padda—not the Client or Sky Law. The only evidence corroborating its legitimacy are the declarations of Padda and the Client. *See* Client decl., Defs.' Ex. A, ECF No. 129-2 at 3–4 ("I agreed and authorized the retention of Padda Law as co-counsel by approving and signing Sky Law's 'Addendum to Retainer Agreement.' A true and correct copy of that Addendum which I recall executing is filed with the Court as 'Exhibit D' to the MSJ."); Padda decl., Defs.' Ex. B, ECF No. 129-3 at 2–3. But the court declines to enforce the addendum for two reasons.

First, the parol evidence rule bars the court from changing the agreement's terms to reflect the addendum because the agreement is an unambiguous, written contract. The parol evidence rule "prohibits admitting evidence that would change the terms of a clear, definite, and unambiguous written contract." *Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP*, 440 F. Supp. 2d 1184, 1191 (D. Nev. 2006), *aff'd*, 583 F.3d 1232 (9th Cir. 2009); *see also Tallman v. First Nat'l Bank of Nev.*, 208 P.2d 302, 306 (Nev. 1949) (prior negotiations and agreements merge into the written contract, and parol evidence is not admissible to vary or contradict the written agreement's terms). However, "parol evidence is admissible to prove a separate oral agreement regarding any matter not included in the contract or to clarify ambiguous terms so long as the evidence does not contradict the terms of the written agreement." *Ringle v. Bruton*, 86 P.3d 1032, 1037 (Nev. 2004). "For example, if a contract contained a blank space, parol evidence would be admissible to explain what information should have been entered therein, but would be inadmissible with respect to the remainder of the contract if the rest of the contract were unambiguous." *Crockett*, 440 F. Supp. 2d at 1191. But here, there agreement's terms are neither blank nor ambiguous. Thus, the parol evidence rule bars this court from changing the agreement's terms to reflect those set forth in the addendum.

Second, even if parol evidence were allowed, the addendum would still not be enforceable. This is because the only parties to the addendum are, at best, Padda and the Client. There is no evidence to suggest that Sky Law agreed to the addendum. And it's a basic principle

8

of contract law that only a person who assents to the terms of a contract can be bound by it. *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005). Thus, absent evidence that Sky Law agreed to the addendum and shared a meeting of the minds with the other parties to it, Sky Law cannot be bound by its terms.

Finally, I note that it's Paul Padda Law—not Sky Law or the Client—named on the Consent to Fee Split agreement's letterhead. Therefore, as the agreement's drafter, any ambiguity in the agreement should be construed against Padda Law. *See Anvui, LLC*, 163 P.3d at 407. Even so, the plain language of the agreement is clear and unambiguous: Sky Law would receive 45% of the attorney's fees, while Padda would receive 55%. The "authorization" language reflects NRPC 1.5, which the agreement is expressly based on. But contrary to the defendants' arguments, the "authorization" language does not excuse them from remitting the 45% that Sky Law is expressly "entitled to" under the agreement; such a reading would render the agreement illusory and, therefore, unenforceable. *See Sala & Ruthe Realty, Inc. v. Campbell*, 515 P.2d 394, 486–87 (Nev. 1973).

In sum, a review of the evidence and arguments shows that the defendants breached the Consent to Fee Split agreement as a matter of law by failing to remit 45% of the attorney's fees in the Client's case. So Sky Law is entitled to summary judgment in their favor on the breach of contract claim.

### 2. *Conversion*

Sky Law argues that Padda had—and breached—his contractual and ethical obligations to "(i) keep Sky Law's referral fee in his client trust account, (ii) notify Sky Law that he had received the attorneys' fees, and (iii) disburse the referral fee to Sky Law." ECF No. 122 at 2. Padda Law and Padda argue that Sky Law's conversion claim fails as a matter of law because it's merely based on an alleged right to receive payment. ECF No. 129 at 30.

"A conversion is defined as a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation,

exclusion, or defiance of such title or rights." *Wantz v. Redfield*, 326 P.2d 413, 414 (Nev. 1958). *Id.* "Conversion does not require a manual or physical taking of property." *Blige v. Terry*, 540 P.3d 421, 431 (Nev. 2023). "Indeed, tangible and intangible property alike can be converted." *Id.* But for an act "to be a conversion, [it] must be essentially tortious; a conversion imports an unlawful act, or an act which cannot be justified or excused in law." *Wantz*, 326 P.2d at 414.

Nevada Revised Statute (NRS) § 10.045 defines "personal property" as "money, goods, chattels, things in action and evidences of debt." NRS 10.045. Further, Rule 1.15 of the NRPC requires lawyers to "hold funds or other property of clients or third persons that is in a lawyer's possession in connection with a representation from the lawyer's own property." NRPC 1.15. It also requires lawyers to "promptly notify the client or third person" when such funds have been received. *Id.*

Here, Padda Law accepted the settlement fees and transferred the funds to a personal account without even informing Sky Law of the settlement. Only after Sky Law brought this action did Padda Law challenge its obligation under the contract. *Cf. Nev. State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 675 (Nev. 2021) ("A party does not exert wrongful dominion over property where it affirmatively submits a genuine dispute regarding the property *to the courts* and then appropriately holds the subject property pending the court's decision." (emphasis added)). Sky Law was entitled to 45% of the contingency fee collected by Padda Law, per the Consent to Fee Split agreement. This duty to remit is reinforced by NRS 10.045 and NRPC 1.15. And by withdrawing the funds and disbursing them into Padda's personal account without promptly giving Sky Law what it's owed, the defendants exercised wrongful dominion of Sky Law's property. In doing so, they also violated their ethical duty under NRPC 1.15. I therefore find that no genuine issue of material fact exists as to Sky Law's claim for conversion and grant its motion for summary judgment accordingly.

### 3. *Unjust Enrichment*

Padda Law argues that it is entitled to summary judgment on the unjust enrichment claim because unjust enrichment is unavailable when there is an express contract, and Padda Law did not unjustly retain Sky Law's money or property. ECF No. 129 at 25–28. I agree that a claim for unjust enrichment in unavailable when there is an express contract.

"The essential elements of quasi contract are a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Leasepartners Corp. v. Robert L. Brooks Tr. Dated November 12, 1975*, 942 P.2d 182, 187 (Nev. 1997) (quotation omitted). "An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Id.*

Here, Sky Law's unjust enrichment claim fails because the Consent to Fee Split agreement is an express, written contract. Thus, I grant the defendants' motion for summary judgment on the unjust enrichment claim.

## III. Motion to Seal

Sky Law seeks to redact certain information or seal or redact certain confidential exhibits to its motion for summary judgment. *See* Mot. to seal, ECF No. 125. The defendants did not file an opposition to the motion.

### A. Legal Standard

When ruling on a motion to seal, courts "start with a strong presumption in favor of access to court records." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096 (9th Cir. 2016) (quoting *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). The moving party bears the burden of overcoming the presumption under one of two standards: the "compelling reasons" standard or the "good cause standard." *Id.* at 1096–97. The compelling

11

reason standard applies to materials attached to a dispositive motion, while the good cause standard applies to materials attached to a discovery motion unrelated to the case's merits. *Id.*

Under the compelling reason standard, the court may only seal records if it identifies a "compelling reason" and articulates a "factual basis"—not "hypothesis or conjecture"—in its ruling. *Id.* at 1096–97 (quoting *Kamakana*, 447 F.3d at 1179). Once the moving party meets this burden, the court then balances the "the competing interests of the public and the party who seeks to keep certain judicial records secret." *Id.* at 1097 (quoting *Kamakana*, 447 F.3d at 1179).

Under the "good cause" standard, the moving party must make a particularized showing of good cause as to why the records should be sealed. *Id.* This standard is analogous to Rule 26(c)'s good cause standard governing protective orders issued during discovery. *Id.* at 1097–98; Fed. R. Civ. P. 26(c) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .").

**B. Discussion**

Here, the compelling reason standard applies because Sky Law seeks to seal material attached to a dispositive motion: the motion for summary judgment. Sky Law argues that their motion should be granted because the exhibits contain confidential information, to include financial records, propriety business information, or confidential settlement information. *See* ECF No. 125. Sky Law further argues that on March 3, 2025, this court entered a protective order stating that disclosure or discovery material containing certain information qualified as "Confidential." *See* Order, ECF No. 112.

Having review the relevant exhibits, I find that Sky Law's motion meets the compelling reason standard, so I grant its motion to seal.[24] This is because Exhibits 12 through 19 involve financial records, and Exhibits 2 through 11 involve the confidential information regarding the

---

[24] I do not grant the motion based on the existence of a protective order. "The mere existence of a stipulated protective order and [a business's] designation of a document as confidential, alone, are insufficient grounds to seal a document." *Empire Tech. Group, Ltd. v. Light & Wonder, Inc.*, 705 F. Supp. 3d 1181, 1189 (D. Nev. 2023) (citing *Heath v. Tristar Prod., Inc.*, 2019 WL 12311995, at *2 (D. Nev. Apr. 17, 2019)).

Client's case. I also find good cause to redact portions of Sky Law's motion for summary judgment because such redactions are limited to financial and confidential information. *See* ECF No. 126. Therefore, I grant Sky Law's motion to seal.

**IV.     Motion to file supplemental authority**

   **A.  Legal standard**

The local rules of this district require parties to obtain leave of court before filing supplemental authority. LR 7-2(g). I may grant such a request for "good cause." *Id.* "Good cause may exist either when the proffered supplemental authority controls the outcome of the litigation, or when the proffered supplemental authority is precedential, or particularly persuasive or helpful." *Alps Prop. & Cas. Ins. Co. v. Kalicki Collier LLP*, 526 F. Supp. 3d 805, 812 (D. Nev. 2021) (citing *Hunt v. Washoe Cnty. Sch. Dist.*, 2019 WL 4262510, at *3 (D. Nev. Sept. 9, 2019)).

   **B.  Discussion**

The defendants move to file supplemental briefing in support of their motion for summary judgment and opposition to the applicability of *In re Sull*, 574 P.3d 942 (Nev. 2025). But I deny that motion because *Sull* is not dispositive in this case. *Sull* concerned advanced fees and fixed or "flat" rates; this case concerns a contingency fee and fee splitting. *Id.* at 946. And as explained above, the Consent to Fee Split is a clear and unambiguous contract that both the parties and the Client signed, so the parol evidence rule bars extrinsic evidence. *See infra* Section II.B.1. Therefore, because *Sull* is not dispositive in this case, I deny the defendants' motion to file supplemental briefing.

**IV.     Conclusion**

IT IS ORDERED that Sky Law's motion for summary judgment **[ECF Nos. 122, 126] is granted.**

IT IS FURTHER ORDERED that the Sky Law's motion to seal **[ECF No. 125] is granted.** The Clerk of Court is kindly directed to maintain the sealed on ECF No. 126 until further order of the court.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment [ECF No. 129] is granted in part and denied in part.

IT IS FURTHER ORDERED that the defendants' motion for leave to file supplemental authority [ECF No. 142] is denied.

The Clerk of Court is kindly directed to enter judgment in favor of Sky Law on claims 1 (breach of contract) and 2 (conversion), and to also enter judgment in favor of the defendants on claim 3 (unjust enrichment), and to close this case.

Dated: January 27, 2026

_____
Cristina D. Silva
United States District Judge

14